PER CURIAM.
*982 This mandamus proceeding concerns the proper defendants and venue with respect to an action seeking declaratory and injunctive relief concerning the proper method for determining the valuation of particular properties utilized for housing low-income tenants.
Factual Background
One of the respondents to the mandamus petition, Glenbrook at Oxmoor I, LLC ("Glenbrook"), is the owner of a parcel of real property located in Jefferson County that is used as low-income housing; the building on the property was constructed in approximately 2008 specifically to qualify under federal income-tax law for an annual credit under 26 U.S.C. § 42, which establishes requirements for real property to fall within the so-called "Low Income Housing Tax Credit" ("LIHTC"). Utilizing procedures set forth in the "Property Tax Plan for Equalization" ("the Tax Plan") adopted by the Alabama Department of Revenue ("the Department"), including an addendum thereto pertaining to valuation of subsidized multifamily-housing units ("Addendum P"), the Jefferson County Board of Equalization ("the Board") originally valued Glenbrook's parcel for the 2010 tax year at $15,138,600; however, after that valuation was challenged through administrative procedures, the Board recalculated the value of the property and assessed its value at $7,778,900.
Dissatisfied with the Board's valuation determination, Glenbrook timely invoked judicial-review rights afforded to it under the "Expeditious and Economical Tax Appeals Act," Act No. 259, Ala. Acts 1943, a local act applicable to Jefferson County, which was substantially amended by Act No. 97-394, Ala. Acts 1997, and has been codified at Ala. Code 1975, § 45-37-241.20 (Local Laws, Jefferson County) ("the Act"). Pursuant to the Act, a trial was held before a circuit judge and a three-person commission of real-property valuation experts ("the commission") sitting as the trier of fact, and, after the close of the parties' presentation of evidence, the circuit judge instructed the commission that it was to "fix the valuation of [Glenbrook's] property ... at its fair and reasonable market value," elaborating on the concept as follows:
"Fair market value is the sum arrived at by fair negotiation between an owner willing to sell and a purchaser willing to buy neither being under pressure to do so. An encumbrance on the value of land is one of the factors that a Tax Assessor must consider when assessing the fair market value of property to be taxed. To find the fair market value of the property, you should consider the property's actual rental income."[1]
(Emphasis added.)
Despite the circuit judge's instructions, the commission returned a verdict valuing the property in question at $7,778,900, the precise amount that the Board had previously determined, and a judgment was then entered on the verdict. Glenbrook filed a postjudgment motion that sought, among other things, a new trial on the basis that the commission had violated the circuit judge's instructions to utilize the reduced actual rents paid by the low-income tenants of the property in determining the fair market value of the property because the commission ratified the Board's valuation (which was shown at trial to have been derived by the Board's personnel without regard to actual rents *983 received by the taxpayer). The trial court, after receiving a response from the Board in opposition to Glenbrook's motion, granted the new-trial request.
After the Board's appeal from that new-trial order was transferred from our supreme court, this court affirmed the order, without an opinion. Jefferson Cty. Bd. of Equalization & Adjustment v. Glenbrook at Oxmoor I, LLC, 171 So.3d 695 (Ala. Civ. App. 2013) (table) (" Glenbrook I"). Among the authorities we cited in our order of affirmance in Glenbrook I were Coffee v. Seaboard System R.R., 507 So.2d 476, 477 (Ala. 1987) (holding that, when a "trial court's order [granting a new trial] does not specify the grounds upon which it was based," that order "is due to be affirmed if it is supported by any good ground"); Hill v. Cherry, 379 So.2d 590, 592 (Ala. 1980) (holding that granting a new-trial motion "rests within the sound discretion of the trial court" and gives rise to "a presumption of correctness which will not be disturbed by [an appellate] court unless some legal right was abused and the record plainly and palpably shows the trial court was in error"); Bekins Van Lines v. Beal, 418 So.2d 81, 83 (Ala. 1982) (noting that "[a]n appellate court is more reluctant to reverse the granting of a motion for a new trial than the denying of a motion for a new trial" and "construes the record against the appellant in reviewing the granting of a new trial"); and Pettus v. Shafer, 286 Ala. 625, 628-29, 244 So.2d 573, 576 (1971) (noting that "a verdict rendered in disregard of [jury] instructions, even though the instructions of the court be erroneous, is against the law of the case and, in a proper case, should be set aside," usually "by granting a motion for a new trial"). Our affirmance was thus based upon the conclusion that the trial court could permissibly have deemed the commission to have simply accepted the Board's valuation, which had been determined without any consideration of the actual rentals paid by Glenbrook's tenants, rather than having conformed its verdict to the law of the case, as represented by the circuit judge's express instruction that the "property's actual rental income" should be considered in determining the fair market value of the property in lieu of simply "rubber-stamping" the Board's valuation figure without having considered the rent limitations inherent in the LIHTC program. No party sought certiorari review of this court's decision in Glenbrook I.
After our affirmance in Glenbrook I, the trial court initially set the cause for a trial before a 12-member jury and specified a date by which dispositive motions were to be filed. The Board and Glenbrook then filed cross-motions in which each sought a summary judgment in its favor; the Board contended that it had followed administrative guidance in the form of Addendum P, whereas Glenbrook asserted that the Board's use of Addendum P to disregard rent restrictions on the subject property was contrary not only to the concept of fair market value but also to the instructions given at the previous trial. The exhibits to the parties' cross-motions included the Tax Plan, the Department's "Alabama Appraisal Manual," a transcript of the previous trial, covenant documents outlining the rent restrictions on the subject property, and an appraisal document. Glenbrook then amended its motion to seek a judgment as to the tax years 2012 and 2013 in line with its suggested valuation, as is permitted under § 45-37-241.20(k). After the parties had jointly stipulated that the matter was not due to be tried to a 12-person jury, the trial court entered a summary judgment in favor of Glenbrook that, as amended, valued Glenbrook's parcel at $1,120,000 as of October 1, 2009 (i.e., for the 2010 tax year), and left open the issue of valuation for subsequent years; the trial *984 court ultimately valued the property at $1,165,000 for 2011; $1,050,000 for 2012; $ 1,115,000 for 2013; and $960,000 for 2014.
The Board timely appealed, and our supreme court again transferred the appeal to this court. We affirmed the trial court's judgment, without an opinion. Jefferson Cty. Bd. of Equalization v. Glenbrook at Oxmoor I, LLC, (No. 2150706, July 15, 2016) 231 So.3d 318 (Ala. Civ. App. 2016) (table) ("Glenbrook II"). Among the authorities we cited in our order of affirmance in Glenbrook II was Walden v. ES Capital, LLC, 89 So.3d 90, 107 (Ala. 2011), which discussed the "law-of-the-case doctrine," which prescribes that a rule of law previously decided in a particular case should continue to govern the same issues in subsequent stages in the same case in order to help bring an end to litigation instead of repeatedly litigating an issue already decided. Notwithstanding the contentions of the parties and the numerous amici curiae in Glenbrook II as to the proper valuation vel non of LIHTC properties, the "law of the case" that was dispositive of that appeal was the rule stated in the circuit judge's instructions in the first trial, which specified two factors to be considered in determining the fair market value of the property at issue: (a) encumbrances on the value of the property and (b) the actual rental income of the property; all other issues presented were either not properly argued or were rendered moot by the law-of-the-case doctrine. Again, as was true in Glenbrook I, no certiorari review was sought regarding this court's decision in Glenbrook II.
Subsequent Proceedings
According to the attachments to the mandamus petition filed in this court, after the trial court entered its judgment in Glenbrook II, the value of Glenbrook's real property was assessed for the 2015 tax year at $7,778,900 and for the 2016 tax year at $5,544,000, and Glenbrook has sought judicial review under the Act as to those 2015 and 2016 valuation determinations. In addition to seeking judicial review under the Act, however, Glenbrook and the Alabama Affordable Housing Association (hereinafter referred to collectively as "the plaintiffs") filed a separate civil action in January 2017 in the Bessemer Division of the Jefferson Circuit Court, seeking nonmonetary relief under Ala. Code 1975, § 6-6-220 et seq., and Rule 57, Ala. R. Civ. P., pertaining to declaratory judgments; the complaint in that action names as defendants the commissioner of the Department, Julie P. Magee, in her official capacity; the Board; and the tax assessor of Jefferson County and the assistant tax assessor of Jefferson County in their respective official capacities. Although the action also seeks allied injunctive relief against the named defendants, we will refer to that action as "the declaratory-judgment action." Specifically, the complaint in the declaratory-judgment action primarily asserts that the method utilized by the defendants for determining the ad valorem tax owed with respect to Glenbrook's real property-which, the complaint alleges, stems from the interpretation and application of Addendum P by the defendants in that action-does not yield the fair and reasonable market value of that property given the rent and income restrictions imposed under the federal LIHTC program and that neither Addendum P, to the extent that it constitutes binding guidance from the Department,[2] nor any tax credits received pursuant to federal law should be *985 utilized in the future in assessing LIHTC properties in general, and Glenbrook's property in particular, for ad valorem taxation.
In February 2017, Julie P. Magee, who was then the commissioner of the Department, filed a motion in the trial court seeking to strike the naming of all other defendants but herself and either the dismissal of or the transfer of the declaratory-judgment action to the Montgomery Circuit Court; the Board, the Jefferson County Tax Assessor, and the Jefferson County Assistant Tax Assessor ("the Jefferson County defendants") separately filed a motion to dismiss or, in the alternative, to strike them as parties. The thrust of both motions was the contention that the Jefferson County defendants were mere instrumentalities of the Department. After the plaintiffs had filed a response in opposition to the defendants' motions, and Magee had filed a reply to that response, the trial court entered an order on April 6, 2017, denying the defendants' motions. Magee's successor as the Department's commissioner, Michael D. Gamble, and the Jefferson County defendants then timely petitioned for a writ of mandamus directing the trial court to dismiss the Jefferson County defendants and to transfer the case to the Montgomery Circuit Court. Pursuant to Rule 43(b), Ala. R. App. P., Gamble's successor as the Department's commissioner, Vernon Barnett, was substituted as a petitioner, and this court called for answers from the plaintiffs. The plaintiffs filed a joint answer with this court.
However, upon submission of the petition for a decision, we have reached the conclusion that, despite our decisions in Glenbrook I and Glenbrook II, this court is not the proper forum to decide the venue and real-party-in-interest issues raised by the petitioners. Pursuant to Ala. Code 1975, § 12-3-11, this court has jurisdiction over mandamus petitions only in relation to cases over which we have exclusive appellate jurisdiction. However, both Glenbrook I and Glenbrook II were appeals pursuant to the Act, as to which appellate jurisdiction is vested in our supreme court in the first instance, see Ala. Code 1975, § 45-37-241.20(n), and we obtained appellate jurisdiction in those cases only via our supreme court's election to transfer those appeals to this court pursuant to Ala. Code 1975, § 12-2-7(6). It appears to this court that, regardless of the form thereof, the plaintiffs' declaratory-judgment action against the defendants made the basis of the defendants' mandamus petition is, in substance, simply an alternative means of attacking the 2015 and 2016 ad valorem valuations of Glenbrook's real property and seeking to prevent future "incorrect" assessments of properties subject to the LIHTC. Our legislature has mandated under the Act that those issues lie within the exclusive appellate jurisdiction not of this court, but of our supreme court,[3] and, in our view, it would be anomalous for our supreme court to have exclusive appellate jurisdiction over disputes as to past tax assessments and not over disputes as to the making of future ad valorem assessments. Accordingly, we transfer the defendants' mandamus petition to our supreme court. See Ala. Code 1975, § 12-1-4.
PETITION TRANSFERRED.*
Pittman, Thomas, Moore, and Donaldson, JJ., concur.
Thompson, P.J., concurs in the result, without writing.

Although the Board initially raised an objection to the emphasized portion of that instruction, the objection was later withdrawn.

The plaintiffs in the declaratory-judgment action also assert that Addendum P is not a "rule" under the Alabama Administrative Procedure Act, Ala. Code 1975, § 41-22-1 et seq., and is invalid.

We note that Ala. Code 1975, § 12-2-7(6), provides for the transfer of certain "civil case[s] appealed to the Supreme Court," not petitions seeking extraordinary writs. Accord Texas Loss Control Sys., LLC, 164 So.3d 602, 606 (Ala. Civ. App. 2014).

Note from the reporter of decisions: On January 10, 2018, the Alabama Supreme Court denied the petition, without opinion (No. 1161136).